Brady, J.
The settlement between the plaintiffs and the Hutchinsons did not embrace the claim against the bank. It was expressly reserved by the plaintiffs’ agreement of settlement, and it is equally clear that as to the stock not sold, the Hutchinsons regarded the plaintiffs°as the owners, Mrs. Hutchinson, by the terms of the settlement made, securing its delivery to her on the payment by her or $10,000. The whole stock hypothecated with the bank was indeed treated in that settlement, and properly so, as an indemnity in part for the advances made to Hutchinson and wife by the plaintiffs, and as the property of the latter. • The inference to be drawn, therefore, from the settlement made, as put in writing, is that the claim against the bank arising out of the hypothecation was a part of the sum or property given the plaintiffs in liquidation of their claim. If it were otherwise it is beyond comprehension that Mrs. Hutchinson would agree to pay the plaintiffs $10,000 for the American Printing Campany’s stock, when they obtained it as the result of the action commenced by them against the bank, a circumstance which must be regarded as a distinct and unmistakable recognition of the plaintiffs’ title to the stock and all things appertaining to it.
The counsel for the receiver of the bank seems to consider the plaintiffs’ interest in it, limited to the $30,000 *474 loaned upon it by the bank, they having a special interest only; but this is an error inasmuch as it was deposited with them as security upon the general account of Hutchinson, and was applicable to any balance due from him, whatever it might be. The only special relations in reference to it indeed were created by the loan and existed between the bank and the plaintiffs. The plaintiffs in any view held the right of possession, of which they could not be deprived lawfully, even by Hutchinson’s payment of the entire loan, although if the stock were not worth more than the loan the conversion would be damnum absque injuria, while, if worth more than the loan, they would be entitled to the excess to be applied on general account. The bank cannot, therefore, avoid the responsibility by resort to any act of Hutchinson individually, or in combination with the cashier. The delivery of the stock to Hutchinson was unauthorized, and the appropriation of the proceeds by him would not protect the bank unless, as suggested, the stock was not worth more than the loan. The only theory eliminated from the facts detailed in favor of the defendant is that, by the settlement mentioned, the debt due the plaintiffs from Hutchinson was paid. This springs from the construction placed upon the agreement between the parties by which there was a surrender of the hens acquired by the attachment issued against Hutchinson in an action by the plaintiffs against him and his wife. It could not have the effect suggested, however, inasmuch as the claim against the bank is reserved, and the agreement provides for releases only after the decision in this action, and by which it was supposed the plaintiffs might recover the American Printing Company’s stock, which was to be delivered to Mrs. Hutchinson as we have seen on the payment of $10,000.
The settlement as suggested seems to have contemplated - the payment of a sum of money, to which any recovery against the bank was to be superadded, both parties pledg- • ing good faith to each other in observing and carrying out its provisions. The Hutchinsons had no claim against the, bank for the conversion of the stock or any fact or circumstance growing out of its hypothecation, but the plaintiffs had, for they were the owners, pro hac vice, not only for the purpose of the loan made but as security for any indebtedness of - Hutchinson to them. The transaction with the bank had nothing whatever to do with the dealings between the plaintiffs ana Hutchinson, and as already shown the bank cannot resort to them for protection unless it can show a settlement by which the account was closed, and the debt due the plaintiffs paid or discharged. The rules of law governing the facts disclosed are too familiar to require *475 illustration or authority. The ingenious brief submitted on behalf of the respondents, though full of points strategical, does not require particular dissection, for the reason that the various theories so ably discussed have no basis in the facts. The rights of the plaintiffs to apply any surplus to the account of Hutchinson which might have resulted from a sale of the stocks by them after the payment of the loan made to them, seems to be overlooked by the defendant’s counsel; but this is really the pivotal point in the case. It is urged,it is true, that the plaintiffs were so financially embarassed that they could not pay the loan, but this is strongly denied. Indeed, many contradictions were presented by the evidence, but in considering the propriety of a direction to the jury to find a verdict the facts in dispute as well as those conceded must be considered for the appellant’s benefit unless completely overcome by paramount evidence, which is not the case here. The plaintiffs, for these reasons, . had the right to go to the jury on the issues and disputed questions, and it was error to deny the motion made for that purpose.
The judgment must, therefore, be reversed and a new trial ordered, with costs to abide the event.
Daniels and Bartlett, JJ., concur.